M. PATRICK, Guardian, etc. v. WILLIAM CARR et al.

1. PRACTICE — PLEA OF NON EST FACTUM. — Under the plea of *non est factum*, the issue is the genuineness of the signature of the defendant, and it is error to instruct the jury that it is incumbent upon the plaintiff to prove the plea and affidavit false. It was only incumbent on the plaintiff to prove the signature of F. Carr to the note to be genuine.

2. VERDICT — "PUT IN FORM." — Where the verdict of the jury is "put in form" in the presence of the jury, as to the calculation of interest only, and no complaint is made of errors in the calculation, or in the amount of the judgment, *held*, that this is not error, though this court is unwilling create precedents of this character. It was an informality, but perhaps not an irregularity, but tends to irregularities and errors, if not to abuses.

ERROR to the Circuit Court of Smith County. Hon. J. W. WATTS, Judge.

The facts of the case are fully stated in the opinion of the court.

*W. B. Shelby*, for plaintiff in error, cited 1 Greenleaf on Evidence (12th edition Redfield), §§ 577 to 581, pp. 622–625; 1 Greenleaf Ev., § 52; ib., § 440, note 3 on page 483; Walker v. Com'r Sinking Fund, 1 S. & M., 372.

*A. B. Smith*, on the same side, cited Norfleet v. Ligman, 41 Miss., 631; Burns v. Kelly, ib., 339; Baker v. Justice, ib., 241; Lombard v. Martin, 147 ib., 39; Herndon v. Bryant, ib., 336; Fairly v. Fairly, 38 ib., 280; Wright v. Clark, 34 ib., 116; Dougherty v. Vanderpool, 35 ib., 165; Garnett v. Kirkman, 33 ib., 389; Heirn v. McCaughan, 32 ib., 18; Greenwood v. Mills, 31 ib., 464.

*Mayers & Lowery*, for defendants in error:

As to the first assignment of errors by plaintiff in error, it will be seen that, if the ruling of the court was error, the plaintiff was not prejudiced by it, because Crook was, in a subsequent part of his testimony, permitted to give his *belief* as to the signature, and plaintiff had full benefit of that belief before the jury. In regard to the proof, by witnesses, of the habits of Carr about suretyship, telling his family his business transactions, etc., it was at best, circumstantial testimony, but was competent under the issue. Carr was entitled, as well as plaintiff, to the benefit of every fact and circumstance tending to show the truth of his side of the issue.

Plaintiff objects to the giving of 2d, 3d, 4th and 7th instructions for defendant Carr. In the 2d, the court said, if the plaintiff had it in his power to adduce a living witness to explain the signing of the note, and failed to do so, it was a fact the jury might take into consideration. In this there was no error. See 39 Miss., 157. The 3d instruction propounds the law in this, as well as other states, and commends itself to the favor of every judicial tribunal. But more than that, *none of the witnesses for plaintiff are experts*, and they so stated.

To the 4th, we can see no objection. It was not possible for Carr to bring proof that he did not sign it, beyond his own oath. He might have brought scores of witnesses, who could have said

they did not believe he signed it. The fact that he did not, but relied upon his own testimony, can have no weight against him, and the court so ruled. We can see no objection to the 7th. It was not the province of Carr to hunt up the man who forged his name to the note; but it was incumbent on the plaintiff to show that Carr signed the note. Carr's theory was, his name was forged, and the instructions propounded the law correctly. The plaintiff had the full benefit of all the instructions he asked, without objection.

The issue was not on the first plea and notice, but on the second plea and affidavit. The clerk, however, copied both. The objection to the verdict, we presume, is not insisted on.

The jury found *for* F. Carr and *against* Wm. Carr, for the amount of note and interest, and the clerk, under directions of the court, made the calculation and entered up the judgment accordingly against Wm. Carr.

Patrick ought not to complain, as it was in his favor, if any error was committed.

A new trial was correctly refused. The verdict was not only *not* "manifestly wrong," but right and proper. The jury chose to believe a truthful and honest man, whom the witnesses "had known for thirty or forty years," in preference to the opinions of men, not experts.

The facts and circumstances connected with the case, as detailed by the witnesses, taken all together, fully justified the verdict.

There was no error in the ruling of the court that did, or could prejudice the plaintiff.

The judgment should be affirmed.

TARBELL, J., delivered the opinion of the court:

This action was brought in the circuit court of Smith county at the September term, 1866, upon a promissory note of which the following is a copy, viz:

" $1,121.55.   On demand, I promise to pay Mr. Patrick or bearer,

guardian of the minor heirs of Isaac Carr, deceased, the sum of eleven hundred and twenty-one dollars and fifty-five cents, with ten per cent. interest from date, this April 6th, A. D. 1860.

[SIGNED]    Wm. Carr,<br/>F. Carr."

At the March term, 1868, of that court, a judgment was obtained upon the note against William Carr, with a verdict for the defendant, F. Carr, who pleaded *non est factum*. There were eleven witnesses sworn for the plaintiff, eight of whom testified that they were acquainted with the handwriting of the defendant, F. Carr, having seen him write, and having a general, some of them, a particular knowledge of his handwriting. Two of these were lawyers — both of whom knew his handwriting — and one had transacted business for him in his professional character. One had been a merchant of Smith county for thirty years. One had been clerk of the county many years. Two were near relatives. All pronounced their positive opinion that the signature to the note was genuine. Two of the elven had held a conversation with the defendant, F. Carr, about this note, and testified, that he said the signature thereto was very like his, but if he signed it, he had forgotten it. The eleventh was the plaintiff, who testified that on one occasion he said to F. Carr that he should require his signature to two certain notes, this one sued on and another, to be executed by his nephew for moneys due the estate of Isaac Carr deceased, brother of defendant, of which the witness was administrator — to which defendant replied that he reckoned the boys were good — afterwards the notes of which that sued on is one were brought to him signed.

It appeared that defendant, F. Carr, had on some occasions become surety for others, though he was a prudent, cautious man about becoming security.

Three witnesses for defendant testified, that it was the habit of defendant to make known his business to his family, and this note had never been mentioned until after suit brought; and that he

was a very cautious and prudent man in his business; as did one or two of the witnesses for plaintiff. The witnesses for defendant were not asked their opinion of the signature to this note, and expressed none. In response to questions by defendant's counsel, nearly all the witnesses testified that defendant was an honest, truthful man.

Defendant, F. Carr, himself testified, that he never signed this note; that he was seventy-three years old, and a member of the Methodist church; that he had no secrets from his family, and seldom gave a note for any purpose, as he generally paid down; that he was not asked to sign this note by any one; that he did not owe the parties anything, and was under no obligations to sign this note, and did not sign it. The credibility of no one of the witnesses on either side was attacked.

The following are such of the instructions given for defendant, as are objected to by plaintiff:

(2.) That if the jury believe from the evidence that the plaintiff had it in his power to adduce living witnesses to explain the signing of the note by F. Carr, and he failed to do so, it is a fact which the jury may take into consideration in making up their verdict.

(3.) That the opinion of experts is intrinsically weak, and ought to be received and weighed by the jury with great caution.

(4.) That because F. Carr did not introduce witnesses to prove that they did not believe it was F. Carr's signature, is no evidence that Carr did not sign the note.

(7.) That it was not incumbent on F. Carr to show who forged his name; on his plea and affidavit, it was incumbent on the plaintiff to prove his plea and affidavit are false.

The verdict of the jury was in these words: "We, the jury, find for the defendant, F. Carr, and against Wm. Carr, the amount of the note and interest." The record then recites that on motion of defendant, the court directed the clerk to calculate the interest and enter the verdict in form, to which defendant objected and excepted.

The plaintiff moved for a new trial, on the following grounds :

1. Because the verdict of the jury was contrary to the law and evidence.

2. Because the court erred in permitting the clerk to calculate the interest due on the note sued on; the jury in their verdict having failed to make such calculation and because the verdict of the jury was wholly irregular and informal in this, that it did not specify the amount found by them against William Carr, one of said defendants.

3. Because the court erred in granting the instructions asked for by defendant.

The causes assigned for error are the following :

1. The court erred in sustaining the objection of defendant's counsel to the question asked witness, Lewis E. Cook, on page 17 of the record, "If from the knowledge thus derived of defendant's signature, he believed the signature to the note sued on to be genuine?"

2. The court also erred in overruling the objection of plaintiff's counsel to the testimony of Lewis E. Crook, J. W. Ward, R. W. Huey, and Emanuel Carr, as to the business habits of F. Carr, his caution in giving security, his communicating all his business to his family, and that none of said witnesses had ever heard of the fact that he was security on the note until after suit brought.

3. The court erred in granting the second, third, fourth and seventh instructions asked for by defendant and objected to by plaintiff.

4. The court erred in permitting the verdict of the jury to be amended by the clerk.

5. The court erred in overruling plaintiff's motion for a new trial.

1. As to the first cause assigned for error, the question is objectionable in form as it indicates to the witness the answer sought. It is what is commonly denominated "leading," and under the circumstances the court was right in sustaining the objection of counsel.    1 Greenleaf on Ev., 437, 434, a.

When the court has a discretion in permitting or refusing "leading questions," see *ib.*

2. *As to the second cause of error.*   Evidence, 'that a man has been many years a resident of a county — that he has borne an irreproachable character — that he is advanced in years, and is a member of the church in support of a party in anticipation and in advance of his own statements as a witness, and before his character is attacked, is, perhaps, a somewhat novel mode of investigating or trying a case; nevertheless, such testimony may doubtless be made admissible by other evidence, or when the character of the party is involved, as it may sometimes be in assumpsit.   It is difficult to state any definite rule upon this point, so much depends upon the attitude of the case.   Whether upon the facts and circumstances set forth in the record, the court was right or wrong, in this instance, we need not determine, as the cause must be sent back upon other grounds, and the case may be very differently presented on another trial.

The third allegation of error embraces objections to the 2d, 3d, 4th and 7th instructions for defendant.   The second instruction for defendant is a correct legal proposition.   If there was a living witness who could explain the signature, prudence would dictate to counsel to produce his testimony or explain his absence.   The fact or circumstance might have left the weight with the jury, yet it is one they would be entitled to consider.   The record, however, does not show that there was any such person in existence, and, therefore, the instruction is erroneous.

Nevertheless, we cannot consider the instruction as seriously objectionable.

The third instruction for defendant was improper.   The proof of the handwriting was not by means of *experts* (1 Gr., 440–440 a), but in the ordinary mode by witnesses who testified from their personal acquaintance with the handwriting in question.   1 Gr., 576–577.

The objection to this instruction is not merely that, while it is

a correct proposition of law, it is yet inapplicable to the case. It is more. In view of the facts before the jury, it was equivalent to telling them, that the testimony, as to the genuineness of the signature, was entitled to very little consideration. It was, in effect, a direct and pointed instruction upon the weight of evidence, and, therefore, seriously erroneous.

The fourth instruction, as given in the record is an absurdity. We presume the word " not " between the words " Carr did " and " sign the note " was *not* in the original. Without that word, the instruction, qualified by permitting it to go to the jury as a circumstance for their consideration, would have rendered it unobjectionable, or, at least impartial. 39 Miss., 157.

The seventh instruction assumes as a fact the forgery of the signature of F. Carr — the genuineness of that signature being the very point in issue to be determined by the jury. This was a serious error, made more pointedly objectionable by the concluding clause of the instruction, that it was incumbent upon the plaintiff to prove the plea and affidavit false. It was only incumbent upon the plaintiff to prove the signature of F. Carr to the note to be genuine.

The action of the court upon the verdict was an informality, perhaps, but hardly an irregularity. This court does not look with favor upon so loose a practice. It is a careless administration of justice, causes complaints, tends to irregularities and errors, if not to abuses.

This case comes within the spirit of the statute of amendments and *jeofails.* It is unlike the case in 1 S. & M., 372, wherein, in an action of detinue, for several articles, the verdict being in gross, the court, after the jury had been discharged from the consideration of the case and retired, assumed to assess the value of each article, without any clue to the opinion of the jury as to their separate value, which was held to be error.

In 24 Miss., 188, the clerk had accidently omitted the word " dollars " in the entry of judgment. On a motion to set aside

execution issued on this judgment, the court sustained the judgment and overruled the motion.

In 1 How., 579, the jury found for the plaintiff "the debt in the declaration mentioned," which the court held to be good.

In 3 How., 227, the verdict was for "$500 and 14 cents, the amount of the promissory note in said plaintiff's declaration, mentioned," which was sustained on error.

In 1 S. & M., 379, the court say, "In regard to verdicts, if the error be in matters of substance it cannot be corrected by the court after the discharge of the jury from the consideration of the cause (Graham's Pr., 661; 7 Cow., 29); at all events without their concurrence.   Prussel v. Knowles, 4 How., 90."

In 4 How., 90, the court permitted the jury after their discharge from the case, and after they had retired from the room, to return and correct a mistake in their verdict.

Presumptively, in the case before us, the verdict was "put in form" in the presence of the jury and with their assent.   As it was only the calculation of interest, and as no complaint is made of errors in the calculation, or in the amount of the judgment, we shall not hold this to be error, though we are unwilling to create precedents of this character.

5. The last cause of error complains that the court erred in overruling defendant's motion for a new trial.   Except upon the weight of evidence, we have already considered all the questions raised by this motion.   Upon this point we simply say, that upon the whole record, we think the court erred in overruling the motion for a new trial.

We send this case back in the hope that upon another trial the developments will leave no doubt touching the signature.

The judgment is reversed and the cause remanded.